ALIBERTI, LAROCHELLE & HODSON ENGINEERING CORP., INC., and AL & H Construction Management, Inc., Plaintiffs and Third–Party Defendants,

v.

FIRST MERIDIAN GROUP, Rainbow/Seabreeze Development Corp., New Heritage Bank, Seabreeze Cabins, Inc. and Pivotal Capital Group, Defendants.

NEW HERITAGE BANK,
Third–Party Plaintiff,

v.

Don LAROCHELLE and Paul Beaudette, Third–Party Defendants.

Civ. No. 92–157–P–C.

United States District Court,
D. Maine.

July 20, 1992.

---

Peter M. Garcia, Skelton, Taintor & Abbott, Auburn, Me., Daniel R. Mawhinney, Elizabeth G. Knox, Thompson & Bowie, Portland, Me., for Aliberti, Larochelle & Hodson Engineering Corp., Inc., AL & H Construction Management, Inc., plaintiffs.

Len Gulino, Preti, Flaherty, Beliveau & Pachios, Portland, Me., for New Heritage Bank, (Federal Deposit Ins. Corp.—as receiver of New Heritage Bank) third-party plaintiff.

Elizabeth G. Knox, Thompson & Bowie, Portland, Me., for Donald Larochelle and Paul Beaudette, third-party defendants.

## MEMORANDUM OF DECISION IN RESPECT TO SUBJECT MATTER JURISDICTION

GENE CARTER, Chief Judge.

Plaintiffs brought this action on July 25, 1989, in Maine Superior Court to enforce their mechanics' liens. Defendant New Heritage Bank, the Massachusetts bank which had financed the underlying development project, answered, also filing a counterclaim and a third-party complaint against two individuals who are employees of the corporate Plaintiffs. On March 6, 1992, the Massachusetts Bank Commissioner took over New Heritage Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. In April the FDIC removed the case to this Court pursuant to 12 U.S.C. § 1819(b) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), and its motion to substitute itself as a party in place of New Heritage Bank was granted in May.

On May 12, 1992, the Court issued in this case an order to show cause why the claims asserted against the FDIC should not be dismissed without prejudice pursuant to the provisions of 12 U.S.C. § 1821(d) pending exhaustion of the procedure for claims resolution by the FDIC established by 12 U.S.C. §§ 1821(d)(3) and (5) and the regulations promulgated under 12 U.S.C. § 1821(d)(4). Shortly after the issuance of the order to show cause here, the Court of Appeals for the First Circuit addressed § 1821(d) in *Serge Marquis v. Federal Deposit Insurance Corp.*, 965 F.2d 1148 (1st Cir.1992). This order addresses the parties' responses to the order to show cause in light of the teaching of *Serge Marquis*.

■ In *Serge Marquis* the FDIC argued that "FIRREA's jurisdictional bar, 12 U.S.C. § 1821(d)(13)(D), requires federal courts to dismiss virtually all civil actions pending against a failed financial institution at the time the FDIC is appointed as receiver." *Id.*, at 1150. The court rejected the argument, finding that federal courts retain subject matter jurisdiction over such actions to the extent that jurisdiction is otherwise provided for in § 1821(d). *Id.*, at 1150. The court found in the subsections of § 1821(d) "a scheme under which courts will retain jurisdiction over pending lawsuits—suspending, rather than dismissing the suits—subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." *Id.*, at 1154.

Underlying the order to show cause here is the presumption that § 1821(d)(13)(D) automatically divests the Court of jurisdiction over claims or counterclaims against a bank filed prior to the creation of the receivership of the FDIC. *See e.g., New Maine National Bank v. Reef*, 765 F.Supp. 763, 765–66 (D.Me.1991). The Court is satisfied from its reading of *Serge Marquis* that that presumption is faulty. Other issues concerning the Court's subject matter jurisdiction are raised by the situation presented here, and they are discussed in the parties' responses.

Relying on 12 U.S.C. § 1821(d)(6)(A), the FDIC argues that the Court should dismiss this case for lack of subject matter jurisdiction because the principal place of business of the failed bank lay outside Maine. Section 1821(d)(6)(A) provides for agency review or judicial determination of claims against the FDIC after the administrative claims process has run its course. It states:

> [T]he claimant [against the FDIC] may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) *or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia* (and such court shall have jurisdiction to hear such claim).

(Emphasis added).

■ The FDIC argues that under § 1821(d)(6), cases like this one, which were pending at the time the FDIC became receiver for a failed bank, may only be continued in the United States District Court for the District of Columbia or for the district in which the failed bank had its principal place of business. This Court has so held in two recent cases, *Federal Deposit Insurance Corp. v. The Satter Companies*, 791 F.Supp. 26 (D.Me.1992) and *Perkins v. Farrah*, 791 F.Supp. 24 (D.Me. 1992). In those cases the Court dismissed the claims against the FDIC.

The Court of Appeals opinion in *Serge Marquis* discusses many aspects of § 1821(d)(6). It does not specifically address the parenthetical portion of § 1821(d)(6) which refers to continuing an action commenced before the FDIC was appointed as receiver. The Court infers, however, from *dicta* in *Serge Marquis* concerning the structure and purposes of FIRREA that dismissal of claims removed to this Court is not warranted on the grounds that the failed bank has its principal place of business in some other district.

The *Serge Marquis* opinion specifically discusses the grant of jurisdiction in § 1821(d). It states:

Section 1821(d)'s grant of jurisdiction is variously expressed. *See, e.g.,* 12 U.S.C. § 1821(d)(6)(A) (conferring district court jurisdiction to entertain suits based upon disallowed claims); 12 U.S.C. § 1821(d)(7)(A) (conferring district court jurisdiction to entertain suits based on claims which, after initial disallowance, have undergone administrative review); 12 U.S.C. § 1821(d)(8)(C) (conferring district court jurisdiction to entertain suits based on claims disallowed under the expedited claims procedure). In addition to these express grants of jurisdiction over disallowed claims, however, section 1821(d) also implies the existence of jurisdiction in other circumstances. *See, e.g.,* 12 U.S.C. § 1821(d)(13)(B) (a provision that vests the FDIC, *qua* receiver, with "all the rights and remedies available" to the failed institution to pursue appealable judgments, and thus allows for continued appellate jurisdiction).

*Serge Marquis,* at 1153. The Court of Appeals explicitly distinguished these section 1821(d) *grants* of jurisdiction from the jurisdiction over cases begun before the appointment of the FDIC as receiver: "In much, the same manner, we think that subsections (d)(5)(F)(ii), (d)(8)(E)(ii), and (d)(12) coalesce to show Congress' discernible intent to *preserve* jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver." *Id.* (emphasis added).

▉ Thus, even though the language of subsection 1821(d)(6)(A) is confusing and might be construed as granting jurisdiction "to continue actions begun before the appointment of the receiver," it is clear from *Serge Marquis* that the federal courts' jurisdiction over such actions is granted else-where, and merely preserved by subsection 1821(d). Thus, the language in subsection 1821(d) restricting the courts in which new suits on claims against the FDIC may be brought after exhaustion of the administrative process does not apply to the kind of cases mentioned in the parenthetical, where jurisdiction is to be preserved.[1] *See Praxis Properties Inc. v. Colonial Savings Bank S.L.A.,* 947 F.2d 49, 63 (3rd Cir.1991) (in overview of § 1821(d)(6)(A) of FIRREA, distinguishing between filing suit on a claim in the specific courts named in the statute and continuing a judicial action commenced prior to appointment of a receiver without reference to a specific forum).

After reading *Serge Marquis* and examining the statutory structure, the Court is further satisfied that the limitation on venue for newly filed claims does not apply to previously filed actions continued after the administrative process. If the proper forum for continuing an action filed before the appointment of a receiver were either the district court for the district where the failed bank had its principal place of business or for the District of Columbia as the FDIC argues, clearly FIRREA would have provided specifically for removal or transfer to those districts, and it has not done so. Otherwise, as the Court of Appeals said in a slightly different context, Congress would have used a verb such as "refile" or "recommence" rather than continue. *Serge Marquis,* at 1153. Indeed, construing section 1821(d)(6)(A) to require dismissal because this is the inappropriate federal forum "simply reads the word 'continue' out of the statute." *Id.*

The question remains, however, whether the limitations imposed upon the filing of new suits against the FDIC were also imposed on the cases which may be continued

---

1. The confusion arises from subsection 1821(d)(6)(A)'s awkward phrasing which permits a claimant to "file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institutions's place of business is located or the United States District Court for the District of Colum-bia." The parenthetical was apparently an afterthought in this poorly-drafted, confusing statute, *see Serge Marquis,* at 1151, and the words of limitation which follow it apply only to the suits discussed in the body of the sentence. That reading makes sense not only for the reasons described in the text, but also because the parentheses would have been unnecessary if the limitation applied to both types of actions.

in the specific grants of jurisdiction governing those cases.[2] In removal cases like this one, it is clear that the source of jurisdiction is to be found in 12 U.S.C. § 1819(b)(2). That statute provides original jurisdiction in the federal courts for actions to which the FDIC is a party. It also provides that "the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court *to the appropriate United States district court* before the end of the 90–day period beginning on the date the action ... is filed against the Corporation or the Corporation is substituted as a party."

The answer to the question of what constitutes "the appropriate United States district court" must be found in the general removal statutes. *See Woburn Five Cents Savings Bank v. Robert M. Hicks, Inc.*, 930 F.2d 965, 96 (1st Cir.1991) ("In the absence of any other specified procedure, logic dictates that FDIC removals continue to be governed by the same general removal principles that govern any other removal."); *Matter of Meyerland Co.*, 960 F.2d 512, 521 (5th Cir.1992) ("We agree that § 1819(b)(2)(B) invokes [28 U.S.C.] § 1441 by referring to "the appropriate United States District Court" and that FIRREA's lack of provisions for the mechanics of removal necessitates reliance on the general schema."). Section 1441(a) of the general removal statute provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441. Since original jurisdiction over this action to which the FDIC is a party is provided in 12 U.S.C. § 1819(b)(2)(A) and the case was pending in the state courts of Maine, this was the "appropriate" court to exercise removal jurisdiction.

The policies expressed in *Serge Marquis* make it clear that once removal jurisdiction has properly attached, the cases removed should not be dismissed pending exhaustion of the administrative process. As the Court of Appeals stated when discussing section 1821(d)'s repeated affirmation that the right to continue an action filed before appointment of a receiver shall not be prejudiced by the filing of a claim with the receiver: "What could be more prejudicial to a claimant's right 'to continue' a pending action than the outright dismissal of the action?" *Serge Marquis*, at 1153.

In *Serge Marquis* the Court of Appeals approved a procedure whereby a previously filed case subject to the administrative claims procedure would be stayed to permit exhaustion of that process. The Court notes that such a procedure parallels this Court's practice of putting cases on the suspense docket until the administrative procedure has run its course. Therefore, having determined both that it had removal jurisdiction over this case and that for the reasons set forth in *Serge Marquis* it should not dismiss it, the Court will place this case on the suspense docket.[3]

---

**2.** Plaintiff AL & H suggests that even if this Court were to determine that it did not have jurisdiction over this case, remand rather than dismissal would be the appropriate action. Examination of the general remand statute, 28 U.S.C. § 1447(c), and the policies of FIRREA as discussed in *Serge Marquis* indicate that remand would indeed be in order if this Court did not find subject matter jurisdiction.

**3.** Plaintiff Aliberti, LaRochelle and Hodson Engineering Corp., Inc. has urged the Court not to dismiss this case because included therein are counterclaims by the failed bank sounding in tort. If the Court does not dismiss the action outright, the FDIC seeks to be able to continue to prosecute its counterclaims while the claims against it are placed on the suspense docket to be continued after the administrative process has run its course. Plaintiff, however, describes the counterclaims as being "intermingled with the original mechanics' lien action," and the Court finds this to be an accurate assessment. Thus, even if the Court might act on the counterclaims while the claims against the FDIC are heard in the administrative forum, judicial economy counsels placing the whole case on the suspense docket until the administrative process is resolved.

Accordingly, it is *ORDERED* that this case be, and it is hereby, placed on the suspense docket of this Court until the claim before the administrative body is resolved.

SO ORDERED.