33 F.3d 561
 63 USLW 2151
 HOLMES FINANCIAL ASSOCIATES, INC., Plaintiff-Appellee,
v.
RESOLUTION TRUST CORPORATION, as Receiver for Metropolitan
Federal Bank, F.S.B., and as Receiver for
Metropolitan Federal Savings & Loan
Association, F.A., Defendants-Appellants,
L. Hall Jones, Jr., et al., Defendants.
 No. 93-5911.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 22, 1994.
Decided Aug. 19, 1994.
 
 J. Alan Hanover, Jeffrey S. Rosenblum (argued and briefed), Michael E. Goldstein, Douglas R. Pyne, Hanover, Walsh, Jalenak & Blair, Memphis, TN, for Holmes Financial Associates, Inc.
 Leo Bearman, Jr., R. Mark Glover, Heiskell, Donelson, Bearman, Adams, Williams & Caldwell, Memphis, TN, Thomas R. Dyer, Memphis, TN, William E. Long, Jr., Walt, Dyer & James, Nashville, TN, Jacqueline R. Helmberger, Kirk K. Van Tine (briefed), Wendy J. Lang (argued), Baker & Botts, Washington, DC, Andrew B. Williams, II, Resolution Trust Corp., Atlanta, GA, Jeffrey Ehrlich, Munsell St. Clair, Resolution Trust Corp., Washington, DC, P. Matthew Sutko (briefed), Washington, DC, for Resolution Trust Corp.
 Before: JONES, SUHRHEINRICH, and BATCHELDER, Circuit Judges.
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 The issue presented is whether, under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), Pub.L. No. 101-73, 103 Stat. 183 (1989) (codified in scattered sections of Title 12 of the United States Code), federal courts have exclusive jurisdiction over suits against the Resolution Trust Corporation (RTC) as receiver for a failed savings and loan, which suits were filed in state court prior to the RTC's appointment as receiver. This issue is one of first impression in the federal courts. Because FIRREA does not contain a clear and unequivocal withdrawal of state court jurisdiction, we hold that state courts retain jurisdiction over cases against the RTC which were pending when the RTC was appointed receiver. Accordingly, inasmuch as Holmes' state court action is jurisdictionally proper, the district court's decision to stay this case pending the outcome of the state case was not an abuse of discretion. Therefore, we AFFIRM the district court's order.
 
 I.
 
 2
 In an ordinary case brought in federal court, there is no way to address, other than in dicta, whether the plaintiff was required to bring that case in federal court. Thus, it comes as no surprise that, to date, no federal court has ruled on the exclusivity of federal jurisdiction under FIRREA. As set forth below, however, the unusually complex procedural posture of this case squarely presents this issue which has, until now, eluded federal review.
 
 A. State Court Action
 
 3
 In 1990, Holmes Financial Associates, Inc., (Holmes) filed suit in Tennessee state court against Metropolitan Federal Bank, F.S.B. ("Old Met"). That case sought redress on claims identical to those in the present case. Old Met moved for dismissal on the ground that Holmes had not stated a claim under state law. The trial court dismissed the case and Holmes appealed.
 
 
 4
 In 1991, while Holmes' case was pending in the Tennessee Court of Appeals, Old Met was declared insolvent and the RTC was appointed its receiver. Old Met's assets were transferred to a newly created institution, Metropolitan Federal Savings and Loan Association, F.A. ("New Met"), which operated under the conservatorship of the RTC.
 
 
 5
 In 1992, while Holmes' appeal was still pending, New Met was declared insolvent and the RTC was appointed its receiver. In June, 1992, the Tennessee Court of Appeals reversed Holmes' dismissal and remanded the case for trial.
 
 
 6
 On remand, the RTC moved for dismissal on the ground that the state court lacked subject matter jurisdiction. Under FIRREA, the RTC claimed, federal courts have exclusive jurisdiction over cases against the RTC. The trial court denied the RTC's motion and the RTC took an interlocutory appeal on that issue. The Tennessee Court of Appeals affirmed on the ground that jurisdiction was concurrent, not exclusive.
 
 B. Administrative Action
 
 7
 As noted above, the RTC was appointed receiver of Old Met during the pendency of the state court action appeal. It notified Holmes of the receivership and Holmes promptly filed its proof of claims. These claims were denied by the RTC. Both parties agree that Holmes has exhausted its administrative remedies[1] and that a de novo judicial determination of its claims is proper, once the underlying jurisdictional dispute is resolved.
 
 C. Federal Court Action
 
 8
 When Holmes' administrative claim was denied, it found itself facing a dilemma. On the one hand, Holmes contended that it could obtain a de novo judicial review of its claim simply by continuing its state court action. On the other hand, if its contention of concurrent jurisdiction were subsequently determined to be wrong, it had only sixty days to file a claim in federal court for judicial review. See 12 U.S.C. Sec. 1821(f)(5).[2] To protect itself, Holmes filed the present, contingent action against the RTC in the Middle District of Tennessee, Old Met's principal place of business. Once filed, Holmes moved for a stay of the federal proceeding pending resolution of the state court action. The district court granted the stay and the RTC appeals.
 
 II.
 
 9
 In Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court held that, where the ordinary abstention doctrines are not applicable, a federal court's decision whether or not to defer to an ongoing state court proceeding "rest[s] on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " Id. at 817, 96 S.Ct. at 1246 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). Mindful of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," id., the Court stressed that "[o]nly the clearest of justifications will warrant dismissal." Id. at 819, 96 S.Ct. at 1247. See also Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 8-9, 103 S.Ct. 927, 933, 74 L.Ed.2d 765 (1983) (Colorado River doctrine may justify staying an action, as well as dismissing it).
 
 
 10
 In Arizona v. San Carlos Apache Tribe of Arizona, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983), the Court addressed a situation, much like the present one, in which identical federal claims were pending in federal and state courts. The Court held that "a dismissal or stay of the federal suits would have been improper if there was no jurisdiction in the concurrent state actions to adjudicate the claims at issue in the federal suits." Id. at 560, 103 S.Ct. at 3210. Where a state court has jurisdiction, however, the Court found that, "concurrent federal proceedings are likely to be duplicative and wasteful" and can create "the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first...." Id. at 567, 103 S.Ct. at 3214. The Court held, therefore, that although the district court was not required to defer to concurrent state proceedings, its decision to do so was not error. Id. at 570, 103 S.Ct. at 3215.
 
 
 11
 Because the issue of exclusive federal jurisdiction is a matter of statutory interpretation, our review is de novo. Heitmanis v. Austin, 899 F.2d 521, 527 (6th Cir.1990). If state courts retain jurisdiction over pre-receivership lawsuits, however, the district court's decision to defer to such a suit is reviewed only for an abuse of discretion. San Carlos Apache Tribe, 463 U.S. at 560, 103 S.Ct. at 3210.
 
 A.
 
 12
 The Supreme Court has held that "under our system, the States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause." Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990).[3] Accordingly, "state courts have inherent authority, and are presumptively competent, to adjudicate claims arising under the law of the United States." Id. It is axiomatic, however, that Congress has the power to preclude state court jurisdiction over federal claims if it so chooses. Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477-78, 101 S.Ct. 2870, 2874-75, 69 L.Ed.2d 784 (1981). To overcome the presumption of concurrent jurisdiction, the Court has stated that it must be "rebutted by explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state court jurisdiction and federal interests." Id. at 478, 101 S.Ct. at 2875. It is this three-part analysis to which both parties have addressed their arguments before this court.
 
 
 13
 The Gulf Offshore analysis, however, has been abandoned, in part, by the Supreme Court in later cases. In Tafflin, Justice Scalia concurred separately to express his view that the second and third "prongs" of the Gulf Offshore analysis were dicta in Gulf Offshore, unsupported by the Court's precedent, and simply wrong. Tafflin, 493 U.S. at 472-73, 110 S.Ct. at 802 (Scalia, J., concurring). Justice Scalia, in reviewing the Court's concurrent jurisdiction jurisprudence, stated:
 
 
 14
 "State courts have jurisdiction over federal causes of action not because it is "conferred" upon them by Congress; nor even because their inherent powers permit them to entertain transitory causes of action arising under the laws of foreign sovereigns, but because "[t]he laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are.... The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other...."
 
 
 15
 It therefore takes an affirmative act of power under the Supremacy Clause to oust the States of jurisdiction--an exercise of what one of our earliest cases referred to as "the power of Congress to withdraw " federal claims from state-court jurisdiction."
 
 
 16
 Id. at 469-70, 110 S.Ct. at 800-01 (quoting, in the first instance, Claflin v. Houseman, 93 U.S. 130, 136-137, 23 L.Ed. 833 (1876), and in the second, Houston v. Moore, 5 Wheat. 1, 26, 5 L.Ed. 19 (1820) (emphasis by Justice Scalia)).
 
 
 17
 Thus, as to the second "prong" of the Gulf Offshore analysis, Justice Scalia concluded that Congress' expectation of (or desire for) exclusive federal jurisdiction, expressed only in legislative history, would be "assuredly not enough" to divest the state courts of their concurrent jurisdiction. Id. 493 U.S. at 473, 110 S.Ct. at 802. If "implication" is sufficient to withdraw jurisdiction from state courts, that implication must be found in the text of the statute, not in "mere[ ] legislative discussion." Id.
 
 
 18
 Regarding the third Gulf Offshore rationale, a "clear incompatibility" with federal interests, Justice Scalia conceded that a statute which referred only to federal court jurisdiction, coupled with the fact that state court jurisdiction "would plainly disrupt the statutory scheme," might justify a finding by implication that Congress had acted to withdraw state court jurisdiction. Id. To the extent, however, that Gulf Offshore purported to permit courts to find exclusive jurisdiction whenever their assessment of "federal interests" indicates that state court jurisdiction would be "undesirable," Justice Scalia rejected Gulf Offshore as insupportable dicta. Id.
 
 
 19
 Justice Scalia's views were adopted, sub silentio, by the Court in a case which was argued just one month after Tafflin was decided and which was handed down in the same term as Tafflin. See Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). There, Justice Stevens, writing for a unanimous Court, held that state courts have concurrent jurisdiction over Title VII cases. Id. at 826, 110 S.Ct. at 1570. "Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction. The omission of such a provision is strong, and arguably sufficient, evidence that Congress had no such intent." Id. at 823, 110 S.Ct. at 1569 (emphasis added).
 
 
 20
 Significantly, Yellow Freight nowhere mentions the three-part analysis which had been created in Gulf Offshore and employed so recently in Tafflin. In fact, the petitioner's "legislative history" arguments in Yellow Freight, detailing Congress' expectation of exclusive federal jurisdiction, fell on deaf ears. "That expectation, even if universally shared, is not an adequate substitute for a legislative decision to overcome the presumption of concurrent jurisdiction." Id. at 824-25, 110 S.Ct. at 1569 (emphasis added). The Court also refused to find that Congress had divested the state courts of jurisdiction by "implication" merely by providing for extensive federal administrative review, de novo review in federal court and by reference to federal rules of civil and appellate procedure. Id. at 825-26, 110 S.Ct. at 1569-70. In short, to overcome the "presumptive competence"[4] of state courts to hear and determine cases arising under federal law, the Court held that Congress must "affirmatively divest" the state courts of that jurisdiction and must do so in the text of the statute. Id. at 823, 110 S.Ct. at 1568.
 
 
 21
 The RTC's claim of exclusive federal jurisdiction in the present case presents an additional consideration which, we believe, is unique in exclusive/concurrent jurisprudence. The RTC claims that Congress has acted not only to divest the state courts of jurisdiction in future actions, but to divest them of actions which were pending in state court at the time the RTC was appointed receiver for the defendant failed thrift. Ordinarily, the subject matter jurisdiction of a court is tested as of the time the action is filed and subsequent changes will not operate to divest a court of its jurisdiction once it has been properly invoked. Although we have no doubts that Congress may override this "time of filing" rule if it so chooses, De La Rama v. United States, 344 U.S. 386, 390, 73 S.Ct. 381, 383-84, 97 L.Ed. 422 (1953) (Brandeis, J.) (citing Ex parte McCardle, 7 Wall. 506, 19 L.Ed. 264 (1869)), we believe that there is an even greater need for clear and affirmative Congressional action when it would do so.
 
 
 22
 Congress is well-versed in the intricacies of concurrent and exclusive federal court jurisdiction and the need for an explicit withdrawal of concurrent jurisdiction. See 29 U.S.C. Sec. 1132(e)(1) (explicitly granting district courts "exclusive jurisdiction" for most actions arising under ERISA, while explicitly preserving concurrent state court jurisdiction for ERISA actions under subsection (a)(1)(B)). See also Tafflin, 493 U.S. at 471, 110 S.Ct. at 801 (Scalia, J., concurring) (noting that Congress, when it seeks to divest state courts of jurisdiction, uses either the phrase "exclusive of the courts of the States" or the words "only" or "exclusive" in reference to the federal courts) (citing, among others, 15 U.S.C. Sec. 80a-35(b)(5) (Investment Company Act of 1943); 15 U.S.C. Sec. 78aa (Securities Exchange Act of 1934); 18 U.S.C. Sec. 3231 (criminal cases); 28 U.S.C. Sec. 1334 (bankruptcy cases)).
 
 B.
 
 23
 The issue in this case is whether state courts retain concurrent jurisdiction to continue to hear and determine claims filed against a savings and loan prior to the RTC's appointment as receiver for the failed thrift.[5] The starting point for this analysis must be Sec. 1821(d)(13)(D), which provides:
 
 
 24
 (D) Limitation of judicial review
 
 
 25
 Except as provided in this subsection, no court shall have jurisdiction over--
 
 
 26
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver ...
 
 
 27
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.
 
 
 28
 Sec. 1821(d)(13)(D) (emphasis added).
 
 
 29
 The principal grant of jurisdiction in Section 1821(d) is Section 1821(d)(6)(A), which provides:
 
 
 30
 (6) Provision for agency review or judicial determination of claims
 
 
 31
 (A) In general
 
 
 32
 Before the end of the 60-day period beginning on the earlier of--
 
 
 33
 [the end of the 180-day period for considering claims or the date that a claim is disallowed]
 
 
 34
 the claimant may ... file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court of the District of Columbia (and such court shall have jurisdiction to hear such claim).
 
 
 35
 Sec. 1821(d)(6)(A).
 
 
 36
 The RTC argues that the plain language of Sec. 1821(d)(13)(D) operates to overcome the presumption of concurrent jurisdiction because it revokes the jurisdiction of all courts to hear cases against failed institutions for which the RTC has been appointed receiver. Because Sec. 1821(d)(6)(A) only grants jurisdiction over such claims to certain federal courts, the RTC concludes that state court jurisdiction is not proper. The RTC claims that Congress drew no distinction between cases that were pending in state court against the savings and loan at the time the RTC was appointed receiver and cases that are filed after the receivership. In both circumstances, the RTC contends, its appointment as receiver divests the state courts of jurisdiction. Thus, under the RTC's construction, post-receivership lawsuits may only be filed in federal court and pre-receivership suits must be dismissed and refiled in federal court. We disagree.
 
 
 37
 The RTC's construction renders virtually meaningless the two parentheticals found in Sec. 1821(d)(6)(A). The first parenthetical, which appears to definitively address the continued viability of pre-receivership claims, states that a party whose claim has been administratively denied by the RTC may "continue an action commenced before the appointment of the receiver." The second parenthetical, which seems to foreclose the very argument advanced by the RTC, states that "such court shall have jurisdiction to hear such claim." Not only does FIRREA not contain an affirmative withdrawal of state court jurisdiction as required by Yellow Freight, Sec. 1821(d)(6)(A) contains language which, when given a natural reading, clearly reaffirms state court jurisdiction in cases filed there prior to the receivership.
 
 
 38
 To avoid the plain meaning of these parentheticals, the RTC argues that the language permitting a litigant to "continue" an action is modified by the designation of certain federal courts that follows it. Thus, the RTC contends that only those litigants whose cases were pending in the "proper" federal courts are permitted to "continue" their actions once administrative remedies have been exhausted. All pre-receivership litigants whose cases were pending in state court, however, would have their cases dismissed and would have to refile in the proper federal court.
 
 
 39
 We reject such a strained interpretation. In the first place, Congress' choice of punctuation is significant. The parentheses indicate that the matter enclosed is in addition to, or in explanation of, the rest of the sentence. Whereas the bulk of claimants have but two options, i.e., de novo review "on the record" by the RTC or a de novo review in certain federal courts, Sec. 1821(d)(6)(A)'s first parenthetical explains that a subset of claimants, those who had filed pre-receivership lawsuits, have a third option, i.e., to continue those lawsuits.
 
 
 40
 Moreover, the RTC's construction does not account for Sec. 1821(d)(6)(A)'s second parenthetical and, in fact, would render that language surplusage. If, as the RTC contends, cases may only be filed or "continued" in the specified federal courts, there would be no need to grant jurisdiction to those courts in Sec. 1821(d)(6)(A) because original federal jurisdiction over all claims involving the RTC has already been granted in Sec. 1441a(l )(1). The only reading of Sec. 1821(d)(6)(A) which gives effect to the second parenthetical is one which acknowledges concurrent jurisdiction over pre-receivership claims. Under that construction, the second parenthetical is an attempt, in hindsight unsuccessful, to "head off" a misguided exclusive jurisdiction argument.
 
 
 41
 As noted above, ours is the first federal court to address the issue of concurrent state court jurisdiction over pre-receivership claims. Two lower federal courts have had occasion, however, to construe Sec. 1821(d)(6)(A) in another context and have adopted a similar construction. In Aliberti v. First Meridian Group, 795 F.Supp. 42 (D. Me.1992), the court considered Sec. 1821(d)(6)(A)'s first parenthetical as "apparently an afterthought in this poorly-drafted, confusing statute, and the words of limitation which follow it apply only to the suits discussed in the body of the sentence." Id. at 45 n. 1 (citations omitted). The statute's restriction of post-receivership claims to specific federal courts was irrelevant to pre-receivership claims, the court held, "because the parentheses would have been unnecessary if the limitation applied to both [pre- and post-receivership] types of actions." Id. See also RTC v. J.F. Associates, 813 F.Supp. 951, 955 (N.D.N.Y.1993) ("the [first] parenthetical phrase represents a separate alternative process to that addressed in the body of the sentence which is unaffected by the conditional language following the parenthetical").
 
 
 42
 Accordingly, under Yellow Freight, we hold that FIRREA does not "affirmatively divest" state courts of jurisdiction over suits filed against a savings and loan prior to the RTC's appointment as receiver. As we read the plain language of Secs. 1821(d)(6)(A) and (d)(13)(D), FIRREA preserves the jurisdiction of state courts to hear and determine such cases.[6]
 
 C.
 
 43
 Our conclusion that state courts retain jurisdiction over pre-receivership cases is in harmony with other provisions of FIRREA which we believe acknowledge, at least implicitly, the possibility of pre-receivership cases remaining in state courts after administrative remedies have been exhausted.
 
 1.
 
 44
 The provision which we believe is the most inconsistent with a finding of exclusive federal jurisdiction in pre-receivership cases is Sec. 1441a(l ). It provides:
 
 
 45
 (3) Removal and remand
 
 
 46
 The Corporation, in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit or proceeding is pending, to the United States district court of the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of [the failed institution] if the action, suit, or proceeding is brought against the institution or the Corporation as ... receiver....
 
 
 47
 Sec. 1441a(l )(3). The presence of this removal provision is clear evidence that Congress was aware that cases against a failing savings and loan would inevitably be pending in state court when the RTC is appointed receiver. Moreover, the permissive nature of the RTC's right to remove indicates Congress' determination that, if the RTC so chooses, it may stay in state court.
 
 
 48
 The RTC seeks to avoid the import of this statute by arguing that it is primarily directed at pre-receivership cases in which the RTC is substituted in some capacity other than receiver or is acting as plaintiff. In these categories of cases, the RTC concedes, concurrent jurisdiction is proper. Only where the RTC is the defendant and is acting in its capacity as receiver does the RTC argue that federal jurisdiction becomes exclusive. The mere fact that Congress granted it the power to remove in this latter category of cases, the RTC asserts, says nothing about whether Congress intended exclusive federal jurisdiction in such cases. We disagree.
 
 
 49
 The RTC's argument is plainly misdirected because the last clause of Sec. 1441a(l ) is specifically directed at pre-receivership cases in which the RTC is defending in its capacity as receiver and specifically gives the RTC the power to remove such cases to a specified federal court. Although removal from a state court which lacks jurisdiction is permitted, see 28 U.S.C. Sec. 1441(e),[7] we can discern no rationale, assuming that Congress had intended exclusive federal jurisdiction, for Congress to have merely permitted, rather than required, the RTC to remove pre-receivership cases. Purely as a matter of strategy, there would be no reason for RTC to choose to remove such a case because, under the RTC's exclusive jurisdiction theory, any judgment entered against it in a state court would be a nullity and unenforceable. The RTC, having articulated a reading of this statute which suits its present purposes, offers no explanation for why Congress would grant the RTC a power it would never strategically want to use.
 
 
 50
 A far more reasonable inference to be drawn from Sec. 1441a(l )(3) is that Congress understood that the RTC would be defending cases in state courts as receiver and decided to the leave the question of whether to remain in state court or to proceed in federal court to the discretion of the RTC. Thus, Sec. 1441a(l )'s removal provision gives the RTC the option to defend in federal court but preserves for the RTC the option to defend in state court if it chooses.
 
 2.
 
 51
 The second provision which we believe to be inconsistent with a finding of exclusive jurisdiction is Sec. 1821(d)(12), which provides that the RTC, upon its appointment as receiver, has a right to a ninety-day stay of pending litigation upon request. This provision qualifies this right, however, by stating that the stay may only be issued by a "court with jurisdiction." Sec. 1821(d)(12)(B). Thus, if state courts are deprived of jurisdiction over pre-receivership cases the moment the RTC is appointed receiver and substituted into a case, no such stay could be granted. The only options open to the RTC in such cases, as discussed above, would be a motion to dismiss for lack of jurisdiction, removal to federal court or to simply "play along" knowing that any adverse judgment would be unenforceable. If state court jurisdiction is concurrent, however, the RTC would then have to choose between defending in state court or defending in federal court. Section 1821(d)(12) gives them the "breathing time" necessary to making this determination. The reasonableness of this construction is further evidenced by the fact that the ninety-day stay under Sec. 1821(d)(12) is the same as the ninety-day period in which the RTC may exercise its right to remove under Sec. 1441a(l )(3)(A)(i).
 
 
 52
 Again, the RTC argues that the stay provision is primarily intended to benefit the RTC when, as receiver, it is substituted in an action as plaintiff. The language of the statute does not support such a distinction, however, and clearly provides for a stay of any action to which the RTC, as receiver, "becomes a party." Sec. 1821(d)(12)(A) (emphasis added).
 
 3.
 
 53
 Further evidence of Congress' recognition of concurrent state court jurisdiction over pre-receivership suits is found in Sec. 1821(d)(5)(F)(ii), which states that "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." Although the court was construing this statute in the context of whether federal court litigants could "continue" their pre-receivership cases, the First Circuit aptly noted: "What could be more prejudicial to a claimant's right 'to continue' a pending action than the outright dismissal of the action?" Marquis v. FDIC, 965 F.2d 1148, 1153 (1st Cir.1992).
 
 
 54
 The RTC points out that Sec. 1821(d)(5)(F)(ii) does not create the right to continue, it merely protects "any right" the claimant may have. The contours of that right, the RTC argues, are set by Sec. 1821(d)(6)(A), which the RTC contends should be read narrowly. The RTC provides no explanation, however, for why Congress would go to such great lengths to ensure litigants' right to continue pre-receivership claims if that right only extends to those few litigants whose suits just happen to have been pending in the "proper" court at the time the RTC was appointed receiver. Nor does the RTC's argument account for that fact that the plain language of the provision protects litigants' right "to continue any action," Sec. 1821(d)(5)(F)(ii) (emphasis added), and not just some small subset of actions.
 
 4.
 
 55
 Finally, we note that Sec. 1821(d)(13)(B) provides that "[i]n the event of an appealable judgment, the [RTC] as ... receiver shall have all the rights and remedies available to the insured depository institution (before the appointment of such ... receiver) ... including removal to Federal court and all appellate rights." Here, Congress expressly recognizes that the RTC, as receiver, may seek review of a state trial court judgment wherever the failed thrift could have sought review. Because the failed thrift has the right to state appellate review, and because Congress extends that right to the RTC as receiver, Sec. 1821(d)(13)(B) necessarily recognizes the continued jurisdiction of state courts to determine pre-receivership claims even after the RTC has been appointed receiver.
 
 III.
 
 56
 Recent Supreme Court cases make clear that state courts have concurrent jurisdiction over cases arising under federal law unless Congress affirmatively divests them of that jurisdiction by express statutory language or by enacting a statutory scheme which only provides for federal fora and which would be plainly disrupted by the exercise of state court jurisdiction. In enacting FIRREA, Congress has done neither. We hold that, not only does the plain language of the relevant statutes not "affirmatively divest" states of their concurrent jurisdiction, it affirmatively permits state courts to continue to assert jurisdiction over cases against the RTC which were filed prior to its appointment as receiver. We also hold that various scattered sections of FIRREA acknowledge, both implicitly and explicitly, the concurrent state court jurisdiction over pre-receivership cases and, therefore, such jurisdiction does not "plainly disrupt" FIRREA's statutory scheme.
 
 
 57
 In reaching our decision, however, we have been troubled by why the RTC has so doggedly pursued this issue in so many cases and with such little success, despite the fact that the resolution of this issue, even if in their favor, would have no practical effect on its operations. At argument, counsel for the RTC was asked why the RTC would waste so many resources seeking a determination of exclusive federal jurisdiction when, under any reading of the statute, the RTC has always had the option of being in federal court whenever it wishes. Counsel responded that the RTC felt it had a "duty" to seek a definitive interpretation of the statute. Reluctantly, we have obliged.
 
 
 58
 Our decision leaves the RTC in a position no worse than if it had prevailed; its right to choose a federal forum in any case, or in all cases, is unaffected by anything we have said. Nor has our decision improved the lot of state court plaintiffs who suddenly find themselves pitted against the RTC. Their "right to continue" in state court is, and always has been, illusory because they may exercise that right only if the RTC permits them. In short, our decision is of no practical importance to either plaintiffs or the RTC and we do not condone the RTC's waste of private, state and federal resources in procuring it.
 
 IV.
 
 59
 For the reasons expressed above, the decision of the district court to stay this action pending the outcome of Holmes' state court action is AFFIRMED.
 
 
 
 [1]
 Although FIRREA does not contain an express exhaustion requirement, courts have unanimously inferred such a requirement from the statutory scheme and have further held that courts must stay any action pending at the time the RTC is appointed receiver until the plaintiffs have exhausted their administrative remedies. See, e.g., Carney v. RTC, 19 F.3d 950, 954-55 (5th Cir.1994) (pre-receivership claim); Bueford v. RTC, 991 F.2d 481 (8th Cir.1993) (same); Marquis v. FDIC, 965 F.2d 1148 (1st Cir.1992) (same); Rosa v. RTC, 938 F.2d 383 (3d Cir.) (post-receivership claim), cert. denied, --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). The only contrary appellate authority, Marc Dev., Inc. v. FDIC, 992 F.2d 1503 (10th Cir.) (court need not await exhaustion, case can continue simultaneously subject only to 90-day mandatory stay), vacated, 12 F.3d 948 (1993), is no longer good authority
 
 
 [2]
 All subsequent statutory references are to Title 12 of the United States Code unless otherwise indicated
 
 
 [3]
 It required a complex procedural stance similar to that in the present case before the issue of concurrent jurisdiction over civil RICO claims could be resolved in Tafflin. There, the district court dismissed the action, apparently under the Colorado River doctrine, because identical civil RICO claims were pending in state court. Because the Court found concurrent jurisdiction, the decision to dismiss was affirmed. Tafflin, 493 U.S. at 467, 110 S.Ct. at 799
 
 
 [4]
 The Court has twice made clear that this "presumption" is not just an evidentiary starting point in determining Congress' intent. Rather, it refers to the fact that concurrent jurisdiction always exists under the Supremacy Clause until affirmatively and expressly revoked by federal law. See Howlett v. Rose, 496 U.S. 356, 370 n. 17, 110 S.Ct. 2430, 2440 n. 17, 110 L.Ed.2d 332 (1990) (citing Minneapolis & St. Louis R. Co. v. Bombolis, 241 U.S. 211, 222, 36 S.Ct. 595, 598, 60 L.Ed. 961 (1918))
 
 
 [5]
 We wish to stress that this case presents only the issue of state court jurisdiction over pre-receivership suits. The issue of the exclusivity of federal court jurisdiction in post-receivership cases presents an entirely different statutory construction problem which is only now beginning to be litigated in the federal courts. See Lloyd v. FDIC, 22 F.3d 335 (1st Cir.1994) (specified federal courts have exclusive jurisdiction over post-receivership claims); Mansolillo v. FDIC, 804 F.Supp. 426 (D.R.I.1992) (same)
 
 
 [6]
 We note that our holding is consistent with that of every state supreme court to address this issue. See Armstrong v. RTC, 157 Ill.2d 49, 191 Ill.Dec. 46, 623 N.E.2d 291 (1993); Herbst v. RTC, 66 Ohio St.3d 8, 607 N.E.2d 440 (1993); Morris v. RTC, 622 A.2d 708 (Me.1993); RTC v. Binford, 114 N.M. 560, 844 P.2d 810 (1992). Cf. Simard v. RTC, 639 A.2d 540 (D.C.1994). Lower courts of Arizona, California, Connecticut, Minnesota, Missouri and New York have reached the same conclusion. See Robbins v. Foothill Nissan, 22 Cal.App.4th 1769, 28 Cal.Rptr.2d 190 (1994); Ungar v. Ensign Bank, F.S.B., 196 A.D.2d 204, 608 N.Y.S.2d 405 (1994); FDIC v. Warmann, 859 S.W.2d 948 (Mo.Ct.App.1993); RTC v. Foust, 177 Ariz. 507, 869 P.2d 183 (App.1993); Berke v. RTC, 483 N.W.2d 712 (Minn. Ct.App.1992); Amlico Corp. Svcs., Inc. v. Connecticut Bank & Trust Co., No. CV88 0097761 S., 1991 WL 86163 (Conn. May 14, 1991). The RTC's one success, after so much effort, is FDIC v. Fleet Credit Corp., 616 So.2d 488, 488-89 (Fla. Ct.App.1993), and we reject both the analysis and the conclusion therein
 
 
 [7]
 The provisions of 28 U.S.C. Sec. 1441 are supplemented by, rather than supplanted by, the removal powers in 12 U.S.C. Sec. 1441a(l). See RTC v. Lightfoot, 938 F.2d 65, 67-68 (7th Cir.1991)