DIGINET, INC., Plaintiff,

v.

WESTERN UNION ATS, INC., a Delaware corporation, and City of Chicago, Defendants.

CITY OF CHICAGO, an Illinois municipal corporation, Cross–Claimant,

v.

WESTERN UNION ATS, INC., a Delaware corporation, Cross–Defendant.

No. 91 C 0156.

United States District Court, N.D. Illinois, E.D.

Feb. 18, 1994.

Jacob J. Meister, Lavin & Waldon, P.C., and Don R. Sampen, Martin, Craig, Chester & Sonnenschein, Chicago, IL, for Diginet Inc.

Thomas F. Geselbracht, John E. Mitchell, Gail Marie Goering, Rudnick & Wolfe, Chicago, IL, and Patricia N. Young, MCI Communications Corp., Washington, DC, for Western Union ATS, Inc.

Kelly Raymond Welsh, City of Chicago, Law Dept. Corp. Counsel; Bennett W. Lasko, Mayer, Brown & Platt, Stuart D. Fullerton, Ruth M. Moscovitch, Susan Herdina, Alan Neff, Diane M. Pezanoski, City of Chicago, Law Dept. Corp. Counsel; and Emily Nicklin, Kirkland & Ellis, Chicago, IL, for City of Chicago, Ill.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Western Union ATS, Inc. and the City of Chicago dispute whether the City can require ATS to pay a franchise fee to the City before permitting it to install fiber optic cable in ducts under City streets.[1] The City would not permit ATS to activate the fiber optic network unless it also agreed to pay a franchise fee of approximately three per cent of the network's revenue or a specific price per foot, whichever is greater. On appeal from a preliminary injunction enjoining ATS from expanding its fiber optic network in the City ducts, see Diginet, Inc. v. Western Union ATS, Inc., 759 F.Supp. 1285 (N.D.Ill. 1991), the Seventh Circuit ruled in ATS's favor, vacating the preliminary injunction. See Diginet, Inc. v. Western Union ATS, Inc., 958 F.2d 1388 (7th Cir.1992) ("Diginet II"). It was held that the franchise fee sought would, under state law, be a tax and that state law did not grant the City the authority to impose this kind of tax. Only a regulatory fee based on the City's costs of regulation could be charged for use of the public way. See id. at 1399–1400. Since similar issues of state law were then pending before the Illinois Supreme Court, the Seventh Circuit remanded the case with directions to stay proceedings until the Illinois Supreme Court ruled in the related case. See id. at 1400.

---

1. Diginet, Inc., a customer of ATS, originally brought this suit, but it settled its contract claim with ATS and voluntarily dismissed its claim against the City. The City's cross-claim against ATS remained pending.

The Illinois Supreme Court initially decided the related case in a manner contrary to *Diginet II*'s construction of Illinois law. However, reconsideration was granted and the Illinois Supreme Court ultimately reached a conclusion consistent with *Diginet II*. See *AT & T v. Village of Arlington Heights*, 156 Ill.2d 399, 189 Ill.Dec. 723, 620 N.E.2d 1040 (1993). In compliance with *Diginet II* and *AT & T*, this court granted the following declaratory relief in an order dated December 16, 1993, 845 F.Supp. 1234.

> (1) The City of Chicago does not have a right to withhold access to the City streets because of refusal on the part of ATS to pay franchise fees or to negotiate for a franchise requiring the payment of franchise fees.

> (2) The only charges the City of Chicago may seek to collect from ATS in connection with the installation of fiber optic cables under the streets of the City are for actual regulatory costs for inspection, regulation, administration and repairs associated with tunneling under public streets.

The final judgment incorporating this declaration and resolving all the claims in the case [2] was dated December 16, 1993, but was not entered on the docket until January 5, 1994.[3] On December 30, 1993, the City served and filed its motion to vacate which was presented in court on January 3, 1994. Since served and filed before the judgment was even entered, it is clearly a timely motion. See Fed.R.Civ.P. 59(e) ("served not later than 10 days after the entry of the judgment").

■ The City now contends for the first time that this court lacks jurisdiction over the dispute between the City and ATS. The City contends that the Tax Injunction Act, 28 U.S.C. § 1341, precludes jurisdiction. That statute provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state."

■ ATS contends that the City's motion comes too late because the case had previously been appealed. ATS, however, relies on cases involving collateral attacks on adverse judgments. See *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982). The present motion is not a collateral attack. Moreover, jurisdictional issues are not waived by failing to raise them early in the litigation. *Id.* at 702, 102 S.Ct. at 2104. Jurisdictional issues may be raised for the first time on appeal and must be raised by the court even if not raised by the parties. *Id.*; *Indiana Waste Systems, Inc. v. County of Porter*, 787 F.Supp. 859, 864–65 (N.D.Ind. 1992). Although the Tax Injunction Act is primarily for the state entity's protection, see *Franchise Tax Board of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 338, 110 S.Ct. 661, 666, 107 L.Ed.2d 696 (1990) (quoting *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (1981)), the state entity cannot waive this jurisdictional issue. *Illinois Central R.R. Co. v. Howlett*, 525 F.2d 178, 180 (7th Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1482, 47 L.Ed.2d 746 (1976); *Trailer Marine Transport Corp. v. Rivera Vazquez*, 977 F.2d 1, 5 (1st Cir.1992); *Hardwick v. Cuomo*, 891 F.2d 1097, 1103–04 (3d Cir.1989); C.A. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4237 at 642 (2d ed. 1988). Therefore, even assuming there was no jurisdiction over the City's cross-claim against ATS, the City's initiation of that cross-claim would not act as a waiver of the

---

2. Still pending is ATS's claim for damages based on a wrongful injunction. The City contends that that prevents the judgment entered on January 5 from being a final judgment. The City confuses damages on claims in a case with damages for a wrongful injunction. The former must be resolved before a judgment will be final. The latter, like petitions for costs or attorneys fees, is a collateral issue that is separate from the final judgment on the merits. See December 16, 1993 order at 1236 n. 1.

3. During the intervening time period, there was a malfunction with the computer used for docketing in this district. That apparently was the cause of the delay in the entry of the judgment.

Tax Injunction Act jurisdictional prohibition.[4] *Keleher v. New England Telephone & Telegraph Co.,* 947 F.2d 547, 549–50 & n. 2 (2d Cir.1991). *Contra State of Arizona v. Atchison, Topeka & Santa Fe R.R. Co.,* 656 F.2d 398, 402 (9th Cir.1981).

▌ First, it must be determined whether the franchise fee involved in this case is a tax. Federal law controls as to the definition of what is a tax to which the Tax Injunction Act applies. *Trailer Marine,* 977 F.2d at 5; *Robinson Protective Alarm Co. v. City of Philadelphia,* 581 F.2d 371, 374–75 (3d Cir. 1978); *Levine v. Supreme Court of Wisconsin,* 679 F.Supp. 1478, 1488 (W.D.Wis.), *rev'd on other grounds sub nom., Levine v. Heffernan,* 864 F.2d 457 (7th Cir.1988), *cert. denied,* 493 U.S. 873, 110 S.Ct. 204, 107 L.Ed.2d 157 (1989). State law determinations as to whether a fee is a tax may still be pertinent or instructive. *See Trailer Marine,* 977 F.2d at 5. In this case, there is no basis of distinction between the state law determination in *Diginet II* and the determination to be made under federal law. The Seventh Circuit's determination in *Diginet II* that the franchise fee is a tax is controlling.

The franchise fee was to be charged as either a percentage of ATS's revenues or at a rate per foot of cable. The fees were to be paid into the City's general revenues. A characteristic of a tax is that it is imposed for revenue-raising purposes. *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128, 132 (7th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); *Travelers Insurance Co. v. Cuomo,* 14 F.3d 708, 713 (2d Cir.1993). Utility franchise fees based on a percentage of revenues have been held to be taxes. *See Keleher,* 947 F.2d at 548–49 (2½% of gross revenues of any utility company using and occupying city streets); *Robinson Protective,* 581 F.2d at 372, 376 (5% of gross earnings for central alarm station companies to use underground wires to transmit their signals); *Yakima Valley Cablevision, Inc. v. Federal Communications Commission,* 794 F.2d 737, 740–41, 744 & n. 24 (D.C.Cir.1986) (cable franchise fees of 3–5% of gross reve-

nues). *Compare San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico,* 967 F.2d 683, 684, 686 (1st Dist.1992) (3% periodic fee on cellular telephone service provider's gross revenue was a regulatory fee, not a tax, because assessed by the regulatory agency, placed in a special fund, and used to defray expenses of regulation). Fees per unit of product have also been found to be taxes. *See Indiana Waste,* 787 F.Supp. at 865 (to retain permit to operate a landfill, the operator was required to pay an annual fee of $.20 per cubic yard of waste disposed in the landfill). Mere regulatory fees that pay for the cost of regulation are not taxes. *Government Suppliers Consolidating Services, Inc. v. Bayh,* 975 F.2d 1267, 1271 n. 2 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993); *San Juan Cellular,* 967 F.2d at 686–87. As *Diginet II* makes clear, however, the franchise fee is not merely a regulatory fee. If it were only a regulatory fee, it would not have been held to be a tax which state law did not authorize the City to impose. *See Diginet II,* 958 F.2d at 1399. There is nothing in this case to support that the franchise fee would go only or primarily for the cost of regulation and not into the general coffers of the City. The franchise fee in this case is a tax.

The next question is whether this case involves the enjoining, suspending or restraining of the assessment, levy or collection of the franchise fee. The City's cross-claim against ATS contains four counts.[5] The first paragraph of the complaint summarizes the relief sought:

> Cross-plaintiff City of Chicago seeks a declaration that defendant Western Union ATS, Inc. may not construct and operate a fiber optic network in the City's public ways without obtaining authority from the City to occupy the public way, and without also paying fair and reasonable compensation to the City for its profit-making use of the public ways [Count I]. In addition, the City seeks to enjoin Western Union ATS from constructing or operating its fiber

---

4. In any event, as the discussion below reveals, the City's cross-claim is not barred by the Tax Injunction Act.

5. There is no Count III.

optic network in the public way until it obtains the permission of the City and agrees to pay fair and reasonable compensation [Count II]. Finally, the City seeks damages in the amount of fair and reasonable compensation for Western Union ATS's past occupation of the public way without permission from the City [Counts IV & V [6]].

Standing in isolation, "fair and reasonable compensation" would also encompass a regulatory fee, if that were the only fee to be collected. The cross-claim, however, defines the fair and reasonable compensation sought by the City as being the franchise fee of approximately (a) 3% of gross billings or (b) annual payment of $3.54 per linear foot downtown plus $1.77 per linear foot for other parts of the city, whichever is greater. Cross-claim ¶¶ 15–16. Throughout this litigation, the City has only sought the franchise fee. Although it is alleged in the cross-claim that ATS refused to pay any fee, in this litigation ATS has consistently represented that it is willing to pay a regulatory fee. The City has never made any claim or presented any evidence as to what an appropriate regulatory fee would be and it has not sought to enjoin ATS's installation of cable for failure to pay a regulatory fee nor has it sought damages for failure to pay a regulatory fee in the past.

■ It is the majority view that the Tax Injunction Act only precludes jurisdiction over attempts to prevent or limit the collection, assessment, or levying of taxes. It does not preclude jurisdiction over claims by a state entity to enforce the collection, assessment, or levying of taxes; claims seeking to force the distribution of taxes already collected; or claims seeking to increase the amount of taxes to be collected, assessed, or levied. *Dunn v. Carey*, 808 F.2d 555, 557–58 (7th

Cir.1986); *Board of Education of Valley View Community Unit School District No. 365U v. Bosworth*, 713 F.2d 1316, 1319–20 (7th Cir.1983); *Appling County v. Municipal Electric Authority of Georgia*, 621 F.2d 1301, 1303–04 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980); *Hargrave v. McKinney*, 413 F.2d 320, 326 (5th Cir.1969); Wright, Miller, & Cooper, § 4237 at 646–47 & n. 19. *Contra Keleher*, 947 F.2d at 549–51. This creates the anomalous situation that a state entity can seek and win an injunction (or declaratory relief) [7] enforcing the collection of taxes, but, if the state entity loses, the defendant cannot obtain an injunction preventing the collection, assessment, or levying of the tax. It has been held that the court lacks jurisdiction to consider a defense that the tax is invalid because that would have the effect of restraining collection of the tax. *Keleher*, 947 F.2d at 549. *See also Grace Brethren*, 457 U.S. at 408, 102 S.Ct. at 2507 (indicating Tax Injunction Act precludes any court relief that would have the practical effect of suspending or restraining collection of taxes). *But see also Bosworth*, 713 F.2d at 1319–20 (limiting *Grace Brethren* to declaratory judgments which are "near-equivalents" to injunctions which are expressly covered by the Tax Injunction Act). Recognizing the anomaly created by taking jurisdiction over cases enforcing the collection of taxes, the Second Circuit has held that the Tax Injunction Act precludes jurisdiction over any action in which the validity of a state or local tax might reasonably be raised as a defense. *Keleher*, 947 F.2d at 550–51.

The argument against *Keleher* is that precluding jurisdiction over a case merely touching on the subject of state taxes is inconsistent with the plain language of the statute and its legislative history. *Dunn*, 808 F.2d at 558. Also, if the state entity is successful,

---

6. Count IV seeks damages for past use of the public way by ATS itself. ATS purchased the fiber optic network from Western Union Corporation. Count V seeks compensation for past use of the public way by Western Union Corporation prior to ATS's purchase of the network.

7. It is well-settled that the Tax Injunction Act also applies to claims for declaratory relief. *Franchise Tax Board*, 493 U.S. at 338, 110 S.Ct. at 666; *California v. Grace Brethren Church*, 457

U.S. 393, 408–11, 102 S.Ct. 2498, 2507–09, 73 L.Ed.2d 93 (1982); Wright, Miller, & Cooper, § 4237 at 663–64. Principles of comity, if not the Tax Injunction Act as well, also preclude exercising jurisdiction over damages claims for the return of taxes already paid. *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); Wright, Miller, & Cooper, § 4237 at 661–62.

the suit will in no way restrain the collection of taxes. Moreover, merely considering a defense of invalidity of a tax will not result in a restraint on the collection of taxes. Only incorporating a finding of invalidity into a judgment would produce that result. Relief can be fashioned so as to avoid such a result. The rationale of *Keleher* is not found to be compelling. In any event, this court is bound to follow the Seventh Circuit, not the Second Circuit. *Dunn* and *Bosworth* clearly hold that the Tax Injunction Act does not preclude jurisdiction over claims related to tax collection, but not seeking to restrain the collection of taxes. *Bosworth* expressly considers the comity principles set forth in *Grace Brethren* and *McNary* and *Dunn* implicitly considers those principles in that *Dunn* expressly cites *Bosworth*. Neither the Tax Injunction Act itself nor principles of comity call for declining to exercise jurisdiction over the City's cross-claim.[8] This court need only fashion its remedy so as to avoid violating the Tax Injunction Act.

■ ATS argues that granting relief in its favor would not violate the Tax Injunction Act. It argues that declaring that it cannot be forced to sign the franchise agreement is not the same as forbidding the collection of the taxes. ATS relies on *Wells v. Malloy*, 510 F.2d 74 (2d Cir.1975). In that case, the plaintiff did not dispute that the tax owed was not collectable. Instead, he contended that he could not afford to pay the tax and that taking away his driver's license was not a constitutionally permissible sanction for the nonpayment. Unlike in *Wells*, ATS is contending that the tax cannot be assessed or collected, not merely that denial of a franchise is an inappropriate sanction for nonpayment. In any event, the Seventh Circuit has distinguished *Wells* as being inapplicable to situations where an ordinary sanction is being imposed. *Schneider*, 657 F.2d at 134. It

violates the Tax Injunction Act to enjoin sanctions for nonpayment of taxes based on the collection of the taxes being invalid. *See id.* (enjoining ticketing trucks for nonpayment of registration fees); *Sears, Roebuck & Co. v. Roddewig*, 24 F.Supp. 321, 324–25 (S.D.Iowa 1938) (enjoining revocation of sales permit for failure of seller to collect taxes). This court lacks jurisdiction to declare that the City can*not* demand payment of the franchise fee as a condition for permitting the installation of ATS's cables.[9]

Since this court lacks jurisdiction to restrain the City's assessment or collection of the franchise fee, the declaratory judgment previously entered will be vacated because it has the effect of restraining the City in its collection of the franchise fee. To avoid jurisdictional problems, instead of granting an actual declaration worded in a different manner, the City's Count I claim for declaratory relief will simply be denied.

ATS has moved for a temporary restraining order and preliminary injunction seeking to enforce the declaratory judgment. Since the declaratory judgment is being vacated, those motions are now moot. In any event, the Tax Injunction Act would preclude this court from having jurisdiction to grant the relief requested. The motion for damages on a wrongful injunction still remains to be resolved;[10] the denial of the City's Count II claim for an injunction has not been modified.

IT IS THEREFORE ORDERED that:

(1) The City's motion to vacate [215] is granted in part and denied in part.

(2) ATS's motions for preliminary injunction [204], temporary restraining order [206], and further relief pursuant to § 2202 [210] are denied. ATS's motion to set hearing on motion for temporary restraining order or, alternatively, to set evidentiary hearing on

---

8. Even if this court does not lack jurisdiction over the City's cross-claim, it has the discretion to decline to consider granting the declaratory relief requested. *See Hargrave*, 413 F.2d at 327. Since comity does not call for declining to exercise such jurisdiction, there is no reason to exercise discretion to decline to consider declaratory relief. Moreover, the City also brings damages claims which require that the same issues be

addressed and there is not the same discretion to decline to consider the damages claims.

9. Consistent with this holding, it was also appropriate, as has been done, to deny ATS leave to file a cross-claim against the City.

10. That motion has been referred to the magistrate judge for a recommendation.

motion for preliminary injunction is denied as moot.

(3) The judgment dated December 16, 1993 and entered on the docket January 5, 1994 is vacated. The Clerk of the Court is directed to enter an amended judgment dismissing Diginet, Inc.'s cause of action without prejudice and dismissing the City of Chicago's cause of action and claims for relief against Western Union ATS, Inc. based on past conduct with prejudice and its cause of action and claims for relief based on future conduct without prejudice.