## NATIONAL PRIVATE TRUCK COUNCIL, INC., ET AL. *v.* OKLAHOMA TAX COMMISSION ET AL.

No. 94–688.   Argued April 18, 1995—Decided June 19, 1995

THOMAS, J., delivered the opinion for a unanimous Court. KENNEDY, J., filed a concurring opinion, *post*, p. 592.

*Richard A. Allen* argued the cause for petitioners. With him on the briefs was *Richard P. Schweitzer.*

*Stanley P. Johnston* argued the cause for respondents. With him on the brief was *Robert B. Struble.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the Direct Marketing Association, Inc., by *George S. Isaacson, Martin I. Eisenstein,* and

JUSTICE THOMAS delivered the opinion of the Court.

In the Oklahoma state courts, petitioners successfully challenged certain Oklahoma taxes as violating the "dormant" Commerce Clause. Although the Oklahoma Supreme Court ordered respondents to award refunds pursuant to

*Robert J. Levering;* for the National Retail Federation by *Timothy B. Dyk, Maryann B. Gall,* and *Jeffrey S. Sutton;* and for the Washington Legal Foundation et al. by *Daniel J. Popeo* and *Richard A. Samp.*

Briefs of *amici curiae* urging affirmance were filed for the State of New Jersey et al. by *Deborah T. Poritz,* Attorney General of New Jersey, *Joseph L. Yannotti,* Assistant Attorney General, *Rachel J. Horowitz,* Deputy Attorney General, *Jeff Sessions,* Attorney General of Alabama, *Grant Woods,* Attorney General of Arizona, *Winston Bryant,* Attorney General of Arkansas, *Daniel E. Lungren,* Attorney General of California, *Richard Blumenthal,* Attorney General of Connecticut, *M. Jane Brady,* Attorney General of Delaware, *Garland Pinkston, Jr.,* Acting Corporation Counsel of the District of Columbia, *Robert A. Butterworth,* Attorney General of Florida, *Michael J. Bowers,* Attorney General of Georgia, *Margery S. Bronster,* Attorney General of Hawaii, *Alan G. Lance,* Attorney General of Idaho, *Jim Ryan,* Attorney General of Illinois, *Pamela Fanning Carter,* Attorney General of Indiana, *Carla J. Stovall,* Attorney General of Kansas, *Chris Gorman,* Attorney General of Kentucky, *Andrew Ketterer,* Attorney General of Maine, *J. Joseph Curran, Jr.,* Attorney General of Maryland, *Scott Harshbarger,* Attorney General of Massachusetts, *Frank J. Kelley,* Attorney General of Michigan, *Hubert H. Humphrey III,* Attorney General of Minnesota, *Mike Moore,* Attorney General of Mississippi, *Joseph P. Mazurek,* Attorney General of Montana, *Don Stenberg,* Attorney General of Nebraska, *Frankie Sue Del Papa,* Attorney General of Nevada, *Jeffrey R. Howard,* Attorney General of New Hampshire, *Tom Udall,* Attorney General of New Mexico, *Michael F. Easley,* Attorney General of North Carolina, *Heidi Heitkamp,* Attorney General of North Dakota, *Betty D. Montgomery,* Attorney General of Ohio, *Theodore R. Kulongoski,* Attorney General of Oregon, *Ernest D. Preate, Jr.,* Attorney General of Pennsylvania, *Pedro R. Pierluisi,* Attorney General of Puerto Rico, *Jeffrey B. Pine,* Attorney General of Rhode Island, *Charles W. Burson,* Attorney General of Tennessee, *Dan Morales,* Attorney General of Texas, *Jan Graham,* Attorney General of Utah, *Jeffrey L. Amestoy,* Attorney General of Vermont, *James S. Gilmore III,* Attorney General of Virginia, *Christine O. Gregoire,* Attorney General of Washington, *James E. Doyle,* Attorney General of Wisconsin, and *Eleni M. Constantine;* for the Boyertown Area School District et al. by *Howard J. Bashman;* and for the National Conference of State Legislatures et al. by *Richard Ruda* and *James I. Crowley.*

state law, it also held that petitioners were not entitled to declaratory or injunctive relief under Rev. Stat. § 1979, 42 U. S. C. § 1983, and, accordingly, that they could not obtain attorney's fees under 42 U. S. C. § 1988(b) (1988 ed., Supp. V). Petitioners argue that this holding violates the Supremacy Clause, U. S. Const., Art. VI, cl. 2.   We affirm.

I

In 1983, Oklahoma imposed third-structure taxes against motor carriers with vehicles registered in any of 25 States.[1] It did so in order to retaliate against those States that had imposed discriminatory taxes against trucks registered in Oklahoma.   In December 1984, petitioners filed a class action in an Oklahoma trial court, arguing that the taxes violated the dormant Commerce Clause and the Privileges and Immunities Clause of Art. IV, § 2, cl. 1.   Pursuant to state law and § 1983, petitioners sought declaratory and injunctive relief as well as refunds of taxes paid.   In addition, they sought attorney's fees under both state law and § 1988.[2]

---

[1] Third-structure taxes are those nonregistration, nonfuel taxes that are neither apportioned nor prorated.   One example of a third-structure tax is an axle tax, which imposes a flat charge based on the number of axles per vehicle.   See *Private Truck Council* v. *Oklahoma Tax Comm'n*, 806 P. 2d 598, 600–601 (Okla. 1990).

[2] Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Section 1988(b) provides:

"In any action or proceeding to enforce a provision of sectio[n] . . . 1983 . . . of this title . . . , the court, in its discretion, may allow the prevailing

The trial court upheld the constitutionality of the taxes, but the Oklahoma Supreme Court reversed and held that the taxes were invalid under our dormant Commerce Clause jurisprudence. *Private Truck Council* v. *Oklahoma Tax Comm'n*, 806 P. 2d 598 (1990). The court awarded refunds under state law, but declined to award relief under § 1983 and declined to award attorney's fees under § 1988. In so ruling, it relied on *Consolidated Freightways Corp.* v. *Kassel*, 730 F. 2d 1139 (CA8), cert. denied, 469 U. S. 834 (1984), which held that § 1983 may not be used to secure remedies for dormant Commerce Clause violations.

After the Oklahoma Supreme Court's decision, we held that one of the "rights, privileges or immunities" protected by § 1983 was the right to be free from state action that violates the dormant Commerce Clause. See *Dennis* v. *Higgins*, 498 U. S. 439 (1991). Accordingly, we granted the taxpayers' petition for certiorari, vacated the judgment, and remanded the case for further consideration in light of *Dennis*. 501 U. S. 1247 (1991).

On remand, the Oklahoma Supreme Court once again held that petitioners were not entitled to relief under § 1983. 879 P. 2d 137 (1994). The court noted that because adequate remedies existed under state law, the Tax Injunction Act, 28 U. S. C. § 1341, would have precluded petitioners from seeking an injunction in federal court. 879 P. 2d, at 140–141. Although the Tax Injunction Act does not apply in state courts, the Oklahoma Supreme Court relied upon the principle of "intrastate uniformity" to conclude that a state court need not grant injunctive or declaratory relief under § 1983 when such remedies would not be available in federal court. *Id.*, at 141 (quoting *Felder* v. *Casey*, 487 U. S. 131, 153 (1988)). We granted certiorari to resolve a conflict among the state courts as to whether, in tax cases, state courts must provide

party . . . a reasonable attorney's fee as part of the costs." 42 U. S. C. § 1988(b) (1988 ed., Supp. V).

relief under § 1983 when adequate remedies exist under state law.[3]

## II

We have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration. Immediately prior to the enactment of § 1983, the Court articulated the reasons behind the reluctance to interfere:

> "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Dows* v. *Chicago*, 11 Wall. 108, 110 (1871).

Since the passage of § 1983, Congress and this Court repeatedly have shown an aversion to federal interference with state tax administration. The passage of the Tax Injunction Act in 1937 is one manifestation of this aversion. See 28 U. S. C. § 1341 (prohibiting federal courts from enjoining the collection of any state tax "where a plain, speedy and efficient remedy may be had in the courts of such State"). We subsequently relied upon the Act's spirit to extend the prohibition from injunctions to declaratory judgments regarding the constitutionality of state taxes. See *Great Lakes Dredge & Dock Co.* v. *Huffman*, 319 U. S. 293 (1943). Later, we held that the Tax Injunction Act itself precluded district courts from awarding such declaratory judgments. See *Cal-*

---

[3] Compare *Zizka* v. *Water Pollution Control Authority,* 195 Conn. 682, 490 A. 2d 509 (1985) (States need not provide § 1983 remedy in state tax cases) and *Backus* v. *Chilivis,* 236 Ga. 500, 224 S. E. 2d 370 (1976) (same), with *Murtagh* v. *County of Berks,* 535 Pa. 50, 634 A. 2d 179 (1993) (States must provide § 1983 remedy in state tax cases), cert. denied, 511 U. S. 1017 (1994), and *Harlan Sprague Dawley, Inc.* v. *Indiana Dept. of State Revenue,* 583 N. E. 2d 214 (Ind. Tax 1991) (same).

*ifornia* v. *Grace Brethren Church*, 457 U. S. 393, 407–411 (1982).

The reluctance to interfere with state tax collection continued in *McKesson Corp.* v. *Division of Alcoholic Beverages and Tobacco, Fla. Dept. of Business Regulation*, 496 U. S. 18 (1990), in which we confirmed that the States are afforded great flexibility in satisfying the requirements of due process in the field of taxation. As long as state law provides a "'clear and certain remedy,'" *id.*, at 51 (quoting *Atchison, T. & S. F. R. Co.* v. *O'Connor*, 223 U. S. 280, 285 (1912)), the States may determine whether to provide predeprivation process (*e. g.*, an injunction) or instead to afford postdeprivation relief (*e. g.*, a refund), 496 U. S., at 36–37. See also *Harper* v. *Virginia Dept. of Taxation*, 509 U. S. 86, 100–102 (1993). Of particular relevance to this case, *Fair Assessment in Real Estate Assn., Inc.* v. *McNary*, 454 U. S. 100, 116 (1981), held that because of principles of comity and federalism, Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law furnishes an adequate legal remedy.

Seeking to overcome the longstanding federal reluctance to interfere with state taxation, petitioners invoke the Supremacy Clause and the straightforward proposition that it requires state courts to enforce federal law, here §§ 1983 and 1988. When they have jurisdiction, state courts have been compelled to provide federal remedies, notwithstanding the existence of less intrusive state-law remedies. See, *e. g.*, *Monroe* v. *Pape*, 365 U. S. 167, 183 (1961). Accordingly, petitioners argue that we should require the Oklahoma Supreme Court to award equitable and declaratory relief under § 1983 and attorney's fees under § 1988.

For purposes of this case, we will assume without deciding that state courts generally must hear § 1983 suits.[4] But this

---

[4] We have never held that state courts must entertain § 1983 suits. See *Martinez* v. *California*, 444 U. S. 277, 283, n. 7 (1980) ("We have never considered . . . the question whether a State *must* entertain a claim under

does not necessarily mean that, having found a violation of federal law, state courts must award declaratory and injunctive relief under § 1983 in tax cases. Though federal courts are obliged to hear § 1983 claims, it is clear that they may not award damages or declaratory or injunctive relief in state tax cases when an adequate state remedy exists. See *Fair Assessment, supra,* at 116; *Great Lakes Dredge & Dock Co.* v. *Huffman, supra,* at 293; *Matthews* v. *Rodgers,* 284 U. S. 521, 525 (1932); 28 U. S. C. § 1341.

As we explain more fully below, the background presumption that federal law generally will not interfere with administration of state taxes leads us to conclude that Congress did not authorize injunctive or declaratory relief under § 1983 in state tax cases when there is an adequate remedy at law.[5]

## III

Petitioners correctly point out that the Tax Injunction Act does not prohibit state courts from entertaining § 1983 suits that seek to enjoin the collection of state taxes. Nor can a desire for "intrastate uniformity" permit state courts to refuse to award relief merely because a federal court could not grant such relief. As petitioners note, it was not until 1875 that Congress provided any kind of general federal-question jurisdiction to the lower federal courts. See *Palmore* v. *United States,* 411 U. S. 389, 401 (1973). "Until that time, the state courts provided the only forum for vindicating many important federal claims." *Ibid.* Because of the Supremacy Clause, state courts could not have refused to hear cases arising under federal law merely to ensure "uniform-

---

§ 1983"). Cf. *Arkansas Writers' Project, Inc.* v. *Ragland,* 481 U. S. 221, 234, n. 7 (1987) (observing that whether state courts must assume jurisdiction over § 1983 claims involving state taxes "is not entirely clear").

[5] *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58, 68–69 (1989), already established that petitioners' claim for refunds against the State could not proceed under § 1983.

ity" between state and federal courts located within a particular state.

In determining whether Congress has authorized state courts to issue injunctive and declaratory relief in state tax cases, we must interpret § 1983 in light of the strong background principle against federal interference with state taxation. Given this principle, we hold that § 1983 does not call for either federal or state courts to award injunctive and declaratory relief in state tax cases when an adequate legal remedy exists. Petitioners do not dispute that Oklahoma has offered an adequate remedy in the form of refunds. Under these circumstances, the Oklahoma courts' denial of relief under § 1983 was consistent with the long line of precedent underscoring the federal reluctance to interfere with state taxation.

Our cases since *Dows* have uniformly concluded that federal courts cannot enjoin the collection of state taxes when a remedy at law is available. See, *e. g., Matthews* v. *Rodgers, supra,* at 525 (a "scrupulous regard for the rightful independence of state governments . . . and a proper reluctance to interfere by injunction with their fiscal operations, require that [injunctive] relief should be denied in every case where the asserted federal right may be preserved without it"); *Singer Sewing Machine Co. of N. J.* v. *Benedict,* 229 U. S. 481, 485 (1913); *Boise Artesian Hot & Cold Water Co.* v. *Boise City,* 213 U. S. 276, 282 (1909). Until *Fair Assessment,* one could have construed these cases as concerning only the equitable powers of the federal courts. See 454 U. S., at 108–111. In *Fair Assessment,* however, the principle of noninterference with state taxation led us to construe § 1983 narrowly. We held that § 1983 does not permit federal courts to award damages in state tax cases when state law provides an adequate remedy. See *id.,* at 116. Although there was much discussion of the limitations on equity power, that discussion was useful only insofar as it provided a background against which § 1983 must be interpreted. In-

deed, because *Fair Assessment* considered whether damages were available under § 1983, the principle of equitable restraint that we discussed could have no direct application in that case.

In concluding that Congress did not authorize damages actions in state tax cases brought in federal court, we found no evidence that Congress intended § 1983 to overturn the principle of federalism invoked in *Dows* and subsequently followed by the courts. Construing § 1983, we held that the case was "controlled by principles articulated even before enactment of § 1983 and followed in later decisions." *Id.,* at 115–116.

Just as *Fair Assessment* relied upon a background principle in interpreting § 1983 to preclude damages actions in tax cases brought in federal court, so we rely on the same principle in interpreting § 1983 to provide no basis for courts to award injunctive relief when an adequate legal remedy exists. Our interpretation is supported not only by the background principle of federal noninterference discussed in *Fair Assessment*, but also by the principles of equitable restraint discussed at length in that case. See *id.,* at 107–109. Whether a suit is brought in federal or state court, Congress simply did not authorize the disruption of state tax administration in this way.

To be sure, the Tax Injunction Act reflects the congressional concern with *federal* court interference with state taxation, see 28 U. S. C. § 1341, and there is no similar statute divesting state courts of the authority to enter an injunction under federal law when an adequate legal remedy exists. But this silence is irrelevant here, because we do not understand § 1983 to call for courts (whether federal or state) to enjoin the collection of state taxes when an adequate remedy is available under state law. Given the strong background presumption against interference with state taxation, the Tax Injunction Act may be best understood as but a partial codification of the federal reluctance to interfere with state taxation. See *Fair Assessment, supra,* at 110 ("[T]he prin-

ciple of comity which predated the Act [§ 1341] was not restricted by its passage"). After all, an injunction issued by a state court pursuant to § 1983 is just as disruptive as one entered by a federal court.

The availability of an adequate legal remedy renders a declaratory judgment unwarranted as well. In *Great Lakes,* we observed that "considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes . . . require a like restraint in the use of the declaratory judgment procedure." 319 U. S., at 299. The declaratory judgment procedure "may in every practical sense operate to suspend collection of the state taxes until the litigation is ended," *ibid.,* and thus must be treated as being no less potentially disruptive than an injunction. See also *Grace Brethren Church,* 457 U. S., at 408 ("[T]here is little practical difference between injunctive and declaratory relief"). Cf. *Samuels* v. *Mackell,* 401 U. S. 66 (1971) (holding that prohibition against enjoining pending state criminal proceedings applies to granting of declaratory relief). Declaratory relief in state tax cases might throw tax administration "into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law." *Perez* v. *Ledesma,* 401 U. S. 82, 128, n. 17 (1971) (Brennan, J., concurring in part and dissenting in part). We simply do not read § 1983 to provide for injunctive or declaratory relief against a state tax, either in federal or state court, when an adequate legal remedy exists.[6]

---

[6] As our opinions reveal, there may be extraordinary circumstances under which injunctive or declaratory relief is available even when a legal remedy exists. For example, if the "enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, [or] throw a cloud upon the title," equity might be invoked. *Dows* v. *Chicago,* 11 Wall. 108, 110 (1871). As we have made clear, however, the multiplicity-of-suits rationale for permitting equitable relief extends only to those situations where there is a real risk of "numerous suits between the same parties, involving the same issues of law or fact." *Matthews* v. *Rodgers,* 284 U. S. 521, 530 (1932). Thus, if a state court awards a refund to a taxpayer on

Of course, nothing we say prevents a State from empowering its own courts to issue injunctions and declaratory judgments even when a legal remedy exists. Absent a valid federal prohibition, state courts are free to issue injunctions and declaratory judgments under *state* law. When a litigant seeks declaratory or injunctive relief against a state tax pursuant to § 1983, however, state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate legal remedy.

Because petitioners had an adequate legal remedy, the Oklahoma courts could not have awarded either declaratory or injunctive relief against the state taxes under § 1983. It follows that when no relief can be awarded pursuant to § 1983, no attorney's fees can be awarded under § 1988. Accordingly, the judgment of the Oklahoma Supreme Court is

*Affirmed.*

JUSTICE KENNEDY, concurring.

One reason for difficulty in adapting 42 U. S. C. § 1983 to an action attacking a state tax is, in my view, that § 1983 was not intended for claims based on the Commerce Clause at all. See *Dennis* v. *Higgins*, 498 U. S. 439, 451 (1991) (KENNEDY, J., dissenting) (violations of the Commerce Clause do not give rise to a cause of action under § 1983); see also *Golden State Transit Corp.* v. *Los Angeles*, 493 U. S. 103, 117 (1989) (KENNEDY, J., dissenting) (a federal statute's pre-emptive effect does not secure a right within the meaning of § 1983). The Court has not adopted that position, however, and on that premise I agree with today's opinion and join it in full.

the ground that the tax violates the Federal Constitution, but state tax authorities continue to impose the unconstitutional tax, injunctive and declaratory relief might then be appropriate. In such circumstances, the remedy might be thought to be "inadequate."