**CITY OF CHATTANOOGA,
TENNESSEE,**
Plaintiff,

v.

**BELLSOUTH TELECOMMUNICATIONS, INC.; MCI Metro Access Transmission Services, Inc.; American Communication Services of Chattanooga, Inc.; and TCG Midsouth, Inc., Defendants.**

No. 1:96–cv–351.

United States District Court,
E.D. Tennessee.

Jan. 26, 1998.

---

810

William S. Parker, Jr., Nelson, McMahan, Parker & Noblett, Chattanooga, TN, for City of Chattanooga.

Robert G. Norred, Jr., Robert J. Boehm, Spears, Moore, Rebman & Williams, Chattanooga, TN, Fred A. Walters, BellSouth, Inc., Atlanta, GA, Bennett L. Ross, BellSouth Telecommunications, Inc., Nashville, TN, J. Henry Walker, IV, BellSouth Telecommunications, Inc., Atlanta, GA, for BellSouth Telecommunications, Inc.

H. Frederick Humbracht, Jr., Boult, Cummings, Conners & Berry, Nashville, TN, Byron R. Trauger, P. Gregory Mitchell, Doramus, Trauger & Ney, Nashville, TN, Thomas P. O'Neil, III, MCI Communications Corporation, Washington, DC, Anthony C. Epstein, David A. Handzo, Jenner & Block, Washington, DC, for MCI Metro Access Transmission Services, Inc.

C. Crews Townsend, Leah M. Gerbitz, Miller & Martin, Chattanooga, TN, Riley M Murphy, American Communication Services of Chattanooga, Inc., Annapolis Junction, MD, for American Communications Services of Chattanooga, Inc.

Hugh J. Moore, Jr., Douglas E. Peck, Witt, Gaither & Whitaker, P.C., Chattanooga, TN, for Teleport Communications Group, Inc., TCG Midsouth, Inc.

L. Kenneth McCown, City of Memphis Law Department, Deputy City Attorney, Memphis, TN, for City of Memphis, Tennessee.

## MEMORANDUM

EDGAR, District Judge.

### I.

### Background

The City of Chattanooga, Tennessee ("City") on February 6, 1996, enacted its Ordinance No. 10377. This Ordinance requires that providers of telecommunications services desiring to install cable and other equipment on City rights-of-way must obtain a franchise from the City by paying a $750.00 application fee and by paying a "franchise fee" of five percent of gross revenue derived from services provided within the City. The Ordinance also requires franchised providers to furnish the City for its exclusive use an underground duct (with underground installations); pole space (with aboveground installations); four dark fiber optic fibers; and engineering assistance for initial hookup by the City. If a provider defaults in any one of several ways in carrying out the franchise, including failure to pay the franchise fee, the City may terminate the franchise.

The City filed a declaratory judgment action in State court naming as defendants various telecommunications providers and seeking a declaration of the rights of the parties with respect to Ordinance 10377. Specifically, the City sought the answers to the following questions:

(1) Are defendants BellSouth and MCI properly occupying the rights-of-way of the plaintiff pursuant to the East Tennessee franchise and the American Union franchise, respectively, as the successors-in-interest to East Tennessee Telephone Company and American Union Telegraph Company, respectively?

(2) Assuming that defendants BellSouth and MCI are properly occupying the rights-of-way of the plaintiff pursuant to the East Tennessee franchise and the American Union franchise, respectively, can the plaintiff properly charge a franchise fee to said defendants pursuant to the provisions of Ordinance 10377?

(3) If the plaintiff cannot properly charge a franchise fee to defendants BellSouth and MCI, can the plaintiff properly charge a franchise fee to defendant ACSI and all others receiving telecommunications franchises pursuant to Ordinance # 10377, or does Tennessee Code Annotated § 65–21–103 prohibit such a franchise fee?

The defendant telecommunications providers are MCI Metro Access Transmission Services, Inc. ("MCI"), BellSouth Telecommunications, Inc. ("BellSouth"), American Communications Services of Chattanooga, Inc. ("ACSI"), and TCG Midsouth, Inc. ("TCG").[1] Defendants removed the case to this Court asserting federal question and diversity of citizenship jurisdiction. 28 U.S.C. § 1331 and 1332. While the questions asked by the City are confined to state law issues, the federal questions arose from defenses and counterclaims asserted by the telecommunications providers wherein [inter alia] they contend that Ordinance No. 10377 violates the Federal Telecommunications Act of 1996 (in particular, 47 U.S.C. § 253), and various provisions of the United States Constitution.

On October 24, 1997 this Court, ruling on the parties' cross motions for summary judgment, answered the questions posed by the City. The answer to the City's first question was yes.[2] The answers to the second and

---

1. TGC was added as a party after the suit commenced.

2. There never really was much of a dispute about this. The City conceded that BellSouth and MCI

third questions was effectively no. The Court's decision was grounded exclusively in state law. The Court concluded that as a matter of Tennessee law, Ordinance 10377's "franchise fee" was an unauthorized tax designed for raising revenue, and rejected the City's argument that it had authority to impose the franchise fee under its police powers and TENN.CODE ANN. § 65–21–103. A declaratory judgment was entered in favor of the defendants.

The City has filed a motion (Court File No. 81) pursuant to FED.R.CIV.P. 59(e) to alter or amend the October 24, 1997 judgment wherein the City, for the first time, contends that due to the constraints of the Tax Injunction Act, 28 U.S.C. § 1341, this Court lacks subject matter jurisdiction, and this case should be remanded to state court.

## II.

### Analysis

#### A. Tax Injunction Act

■ The Tax Injunction Act, 28 U.S.C. § 1341, provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of each State." Section 1341 has been given a broader reading by the courts than its literal words suggest. It forbids federal district courts not only from ordering injunctive relief, but declaratory relief as well. *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *California v. Grace Brethren Church*, 457 U.S. 393, 407–411, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982); *Cumberland Farms, Inc. v. Tax Assessor, State of Maine*, 116 F.3d 943, 945 (1st Cir. 1997); *Thiokol Corp., Morton Intern., Inc. v. Roberts*, 76 F.3d 751, 761 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2448, 138 L.Ed.2d 206 (1997); *In Re Gillis*, 836 F.2d 1001, 1004 (6th Cir.1988); *Dominion Nat. Bank v. Olsen*, 771 F.2d 108, 114 (6th Cir. 1985); *King v. Sloane*, 545 F.2d 7 (6th Cir. 1976).

■ Section 1341 "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981) (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976)); *see also Gillis*, 836 F.2d at 1003. This last consideration was the principal motivating force behind the legislative enactment of the statute. Section 1341 is first and foremost a vehicle to limit drastically the jurisdiction of federal district courts to interfere with so important a local concern as the collection of taxes. *Rosewell*, 450 U.S. at 522; *Gillis*, 836 F.2d at 1003; *Dominion Nat. Bank*, 771 F.2d at 115. As the Sixth Circuit stated in *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987), "[t]he Tax Injunction Act is an expression of congressional purpose to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising."

#### B. Ordinance No. 10377 As A Tax

■ The first inquiry concerning applicability of the Tax Injunction Act is whether the franchise fees and other requirements of Ordinance 10337 are a tax. *Cumberland Farms*, 116 F.3d at 945; *Diginet, Inc. v. Western Union ATS, Inc.*, 845 F.Supp. 1237, 1240 (N.D.Ill.1994). This Court has already concluded, for reasons set forth in the October 24, 1997 opinion, that the Ordinance imposes a tax under Tennessee law. None of the authorities submitted by the City or by *amici* have altered this conclusion. However, what is a "tax" within the meaning of Section 1341 is a different issue; and it is governed by federal, not state, law. *Trailer Marine Transport Corp. v. Rivera Vazquez*, 977 F.2d 1, 5 (1st Cir.1992); *Wright*, 835 F.2d at 144; *Robinson Protective Alarm Co. v. Philadelphia*, 581 F.2d 371, 374–76 (3d Cir.1978); *Diginet*, 845 F.Supp. at 1240. The City's labeling of the Ordinance 10377 franchise fees as "rent" is not determinative of whether those fees are a tax for purposes

are the current holders of nonexclusive franchis- es granted by the City in 1880.

of applying 28 U.S.C. § 1341. *Robinson Protective Alarm*, 581 F.2d at 376, quoted with approval by the Sixth Circuit in *Wright*, 835 F.2d at 144. Nor is this Court's prior state law determination that the Ordinance imposes a tax determinative, though it may be pertinent or instructive. *Diginet*, 845 F.Supp. at 1240.

■ In addressing the question of whether a government imposed assessment constitutes a tax under 28 U.S.C. § 1341, the federal courts have usually sought to determine whether the purpose of the particular assessment is to raise general revenue or, in the alternative, to merely impose and collect a regulatory or punitive levy in the nature of a privilege fee. *Cumberland Farms*, 116 F.3d at 946–47; *Wright*, 835 F.2d at 144–45. Section 32–148 of Ordinance 10377 provides that telecommunications providers shall pay to the City of Chattanooga on a quarterly basis a franchise fee of five per cent (5%) of the Provider's gross revenue. The term "gross revenue" is defined in Section 32–231 of Ordinance 10377 as meaning all revenues of any kind collected by the telecommunications provider from any source whatsoever for customer access to a long distance telephone carrier or provider using a telecommunications system within the City. Section 32–148 of Ordinance 10377 further states that in the event it is determined the City is not permitted by law or otherwise to assess or collect a franchise fee based upon the telecommunications provider's gross revenue, then the provider shall in the alternative pay an annual franchise fee to the City based on a flat fee per linear foot of public right of way in which the provider has installed its telecommunications system according to a schedule of fees which progressively increases over time. Since the City has made no effort to relate the franchise fee to its costs in maintaining its rights of way, it is clear that it would be used to pay the City's general debts and obligations.

Section 32–234 of Ordinance 10377 states that to the extent a provider installs its telecommunications system in underground ducts, the provider shall furnish to the City one duct of equal size for the City's exclusive use at no cost to the City. If the provider installs its own telephone poles above ground, then it is also required to reserve space on the poles for the City to install the City's own telecommunications lines. To the extent a provider installs fiber optic cable, it must also provide the City with four "dark", *i.e.*, unused, optic fibers and access thereto including lateral connections on the provider's telecommunications system, at no cost to the City for the City's unrestricted exclusive use. Ordinance 10377 also requires providers to furnish coordination and engineering assistance to the City for such fiber optic access for initial hookup as the City may desire at no cost to the City. The City cannot sell or lease the dark optic fibers to any competitor or potential customer of the provider during the term of any franchise granted by the City to the provider for telecommunications services.

■ One of the most important characteristics and distinguishing features of a tax is that it is designed and imposed for the purpose of raising general revenue. *Cumberland Farms*, 116 F.3d at 946–47; *Hager v. City of West Peoria*, 84 F.3d 865, 870–71 (7th Cir.1996); *Chicago & North Western Transp. Co. v. Webster County Bd. of Supervisors*, 71 F.3d 265, 266–67 (8th Cir.1995); *San Juan Cellular Telephone Co. v. Public Service Comm'n*, 967 F.2d 683, 685 (1st Cir.1992); *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1399 (7th Cir.1992); *Wright*, 835 F.2d at 144–45; *Brock v. Washington Metropolitan Area Transit Auth.*, 796 F.2d 481, 488–89 (D.C.Cir.1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 494 (1987); *Diginet*, 845 F.Supp. at 1240. The First Circuit has aptly said that in surveying the reported case law, the federal courts have "sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other." *San Juan Cellular Tel. Co.*, 967 F.2d at 685. The characterization of a government assessment as being either a tax or a regulatory fee is rarely a choice between black and white. Many government assessments or levies fall into a gray area in the middle of the spectrum. *Cumberland Farms*, 116 F.3d at 947. When courts are faced with cases that lie near the middle of this spectrum, the courts tend to emphasize

and focus on the revenue's ultimate use and the reason why the revenue is being taken or collected. If the revenue raised by the government assessment provides a general benefit to the public of a sort typically financed by a general tax, then the assessment will usually be deemed a tax rather than a fee. *Cumberland Farms,* 116 F.3d at 946–47; *Hager,* 84 F.3d at 870–71; *San Juan Cellular Tel. Co.,* 967 F.2d at 685.

■ The franchise fees sought to be imposed on telecommunications providers by the City of Chattanooga in Ordinance 10377 fall much nearer to the tax end of the spectrum than the fee end. A most salient factor in reaching this decision is that the destination of the revenue raised by the franchise fees will be the City's general revenue. *Cumberland Farms,* 116 F.3d at 947. Moreover, federal courts in other jurisdictions have held in various contexts that utility franchise fees based on a percentage of revenues are taxes. *Diginet,* 958 F.2d at 1391–92, 1399, and 845 F.Supp. at 1237–40 (franchise fees sought to be imposed by City of Chicago on fiber optic telecommunications network provider based on either 3 percent of the provider's gross revenues/gross billings and an alternative franchise fee per linear foot for use of public rights-of-way in installing telecommunications system in ducts under the city's streets were deemed a revenue raising tax); *Keleher v. New England Telephone & Telegraph Co.,* 947 F.2d 547, 548–49 (2d Cir.1991) (2 ½ percent of gross revenues of any utility company using and occupying city streets is a tax); *Yakima Valley Cablevision, Inc. v. Federal Communications Commission,* 794 F.2d 737, 740–41, 744 & n. 24 (D.C.Cir.1986) (cable franchise fees of 3–5 percent of gross revenues); *Robinson Protective Alarm,* 581 F.2d at 372, 376 (5 percent of gross earnings for central alarm station companies to use underground wires to transmit their signals); *Independent Coin Payphone Ass'n, Inc. v. Chicago,* 863 F.Supp. 744, 755 (N.D.Ill.1994).[3]

■ The principles of comity and federalism governing the relationship between the federal and state governments make it necessary that federal courts abstain from becoming embroiled in disputes about state and local taxation. Thus, regardless of whether Ordinance 10377 imposes what can confidently be called a tax under 28 U.S.C. § 1341, it is enough like a tax to invoke those principles. *Gillis,* 836 F.2d at 1005. Even apart from the Tax Injunction Act, there is a general background legal principle that federal courts not intervene in state tax administration. *National Private Truck Council,* 515 U.S. 582, 586, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 109, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 298, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943).

**C. *Adequate Alternative Remedy in State Court***

■ The second inquiry in applying the Tax Injunction Act is whether "a plain, speedy and efficient remedy may be had in [state court]." Declaratory relief was originally sought by the City. The defendant telecommunications providers, in response, also seek such relief. The City wants a declaratory judgment that Ordinance 10377 is valid under state law. The defendants seek a declaratory judgment that the Ordinance is invalid on state law, federal statutory law, and constitutional (state and federal) grounds. The Tennessee state courts can effectively deal with all of these issues and grant any remedy which is required.

The only question which might be raised about this conclusion is whether the state courts would have concurrent jurisdiction with federal courts over claims made by the telecommunications providers that the Ordinance violates Section 253 of the Federal Telecommunications Act of 1996, 47 U.S.C.

---

**3.** The City relies on an 105–year–old supreme Court case, *City of St. Louis v. Western Union Telegraph Co.,* 148 U.S. 92, 13 S.Ct. 485, 37 L.Ed. 380 (1893), for the proposition that the franchise fee is rent. The law, as well as the telecommunications industry, has evolved since

1893. The City's five percent (5%) of gross revenue franchise fee is distinguishable from five dollars ($5.00) per annum per telephone pole fee addressed in *City of St. Louis.* Of course, *City of St. Louis* does not concern the Tax Injunction Act, which was not enacted until 1937.

§ 253. Section 253 is the as yet uncharted result of a tug of war which occurred between proponents of this legislation who wanted to prevent local governments from deterring competition among telecommunications providers, and local governments, which wanted to maintain control over their rights-of-way.

The primary Telecommunications Act issue here is whether Ordinance 10377 is, under Section 253(c), a permissible exercise of the City's authority "to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of the public rights-of-way on a nondiscriminatory basis . . ." The legislative history of the Telecommunications Act indicates Congress anticipated that disputes under Section 253(c) would be addressed in the local federal district courts. *TCG Detroit v. City of Dearborn*, 977 F.Supp. at 840 (*quoting* 141 CONG.REC. S8176 (daily ed. June 13, 1995) (statement of Sen. Gorton)). *See also* 141 CONG.REC. S8169–S8176 (daily ed. June 12, 1995) (debate concerning Feinstein – Kempthorne amendment which proposed entirely striking subsection (d) of § 253 to preclude Federal Communications Commission ("FCC") jurisdiction over disputes concerning subsection (c) rights-of-way management and retain jurisdiction in federal district courts); 141 CONG. REC. S8212 (daily ed. June 13, 1995) (debate concerning second-degree Gorton amendment limiting FCC jurisdiction to disputes under subsection (a) and (b), but placing jurisdiction over subsection (c) disputes with federal district courts); 141 CONG.REC. S8308 (daily ed. June 14, 1995) (rejecting Feinstein–Kempthorne amendment and unanimously adopting Gorton amendment). As codified, subsection (d) tracks the Gorton amendment, giving the FCC jurisdiction over subsections (a) and (b) only. 47 U.S.C. § 253(d).

 Although Congress intended local federal district courts to have jurisdiction over Section 253(c) disputes, there is a presumption that state courts have concurrent jurisdiction to adjudicate claims arising under federal statutes. *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990); *Tafflin v. Levitt*, 493 U.S. 455, 458–59, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981); *Holmes Financial Associates, Inc. v. Resolution Trust Corp.*, 33 F.3d 561, 564 (6th Cir.1994); *CSXT, Inc. v. Pitz*, 883 F.2d 468, 472 (6th Cir.1989); *Chivas Products, Ltd. v. Owen*, 864 F.2d 1280, 1282 (6th Cir.1988). The "presumptive competence" of state courts to hear cases arising under a federal statute may only be overcome by language in the statute affirmatively divesting the state courts of jurisdiction. *Holmes*, 33 F.3d at 565, *Davis v. Sun Oil Co.*, 953 F.Supp. 890, 894–95 (S.D.Ohio 1996). Nowhere in the Telecommunications Act of 1996 did Congress evince any intent to divest state courts of jurisdiction under Section 253(c).[4] Thus, the state courts of Tennessee have jurisdiction over the defendants' Section 253 claims, along with all other issues in this case.

### III.

#### *Conclusion*

The City's motion to alter or amend will be **GRANTED** insofar as it seeks a **REMAND.** Pursuant to 28 U.S.C. § 1341, this Court does not have subject matter jurisdiction.

An order will enter.

#### *ORDER*

For the reasons set forth in the memorandum filed herewith, the motion of the City of Chattanooga to alter or amend, to dismiss and to remand (Court File No. 81) is hereby **GRANTED** insofar as the City seeks a remand of this case. Accordingly, the opinion and order entered by this Court on October 24, 1997, are hereby **VACATED,** and this

---

4. One United States District Court has held that Section 253(c) does not create a private right of action for an aggrieved telecommunications provider. *GST Tucson Lightwave, Inc. v. City of Tucson*, 950 F.Supp. 968, 971 (D.Ariz.1996). A contrary conclusion was reached in *TCG Detroit*, 977 F.Supp. at 841.

case is **REMANDED** to the Circuit Court of Hamilton County, Tennessee.

SO ORDERED.